IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PAMELA T. CANNATARO,** individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>     v.<br><br>**PORTLAND GENERAL ELECTRIC COMPANY, MARIA POPE, and JAMES F. LOBDELL**,<br><br>       Defendants. | Case No. 3:20-cv-1583-SI (LEAD)<br><br>Related Case: 3:20-cv-1786-SI<br><br>**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD AND LIAISON COUNSEL** |
| **PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI,** individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>     v.<br><br>**PORTLAND GENERAL ELECTRIC COMPANY, MARIA POPE, and JAMES F. LOBDELL**,<br><br>       Defendants. | Case No. 3:20-cv-1786-SI |

**Michael H. Simon, District Judge.**

Between September 3, 2020 and October 16, 2020, three shareholders of Portland General Electric Company (PGE or the Company) filed three putative class action securities fraud lawsuits against PGE, its President and Chief Executive Officer Maria Pope (Pope), and its Chief Financial Officer James F. Lobdell (Lobdell) (collectively, Defendants). On September 3, 2020, the same day the first lawsuit was filed, an early notice was published that advised members of the purported plaintiff class of the pendency of the action and the deadline of November 2, 2020, for any putative class member to move to be appointed as lead plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the PSLRA).

On November 2, 2020, the Public Employees' Retirement System of Mississippi (Mississippi PERS) moved for consolidation of all related cases, appointment as lead plaintiff, and approval of lead and liaison counsel.[1] The Court has received no similar motions from any other shareholder, and the deadline has passed. Because the motion of Mississippi PERS satisfies all requirements under the PSLRA and Rules 23(a) and 42(a) of the Federal Rules of Civil Procedure, the Court grants the motion of Mississippi PERS, as more fully explained below.

---

[1] On September 3, 2020, Kevin Hessel filed the first lawsuit, alleging a class period of April 24, 2020 through August 24, 2020. *Hessel v. Portland Gen. Elec. Co.*, No. 3:20-cv-1523-SI. On September 11, 2020, Pamela T. Cannataro filed the second lawsuit, also alleging a class period of April 24, 2020 through August 24, 2020. *Cannataro v. Portland Gen. Elec. Co.*, No. 3:20-cv-1583-SI. On October 16, 2020, Mississippi PERS filed the third lawsuit, alleging a class period of February 13, 2020 through August 24, 2020 (Class Period). *Public Employees' Retirement System of Mississippi v. Portland Gen. Elec. Co.*, No. 3:20-cv-1786-SI. On October 29, 2020, Mr. Hessel voluntarily dismissed his lawsuit without prejudice.

PAGE 2 – ORDER CONSOLIDATING CASES

**STANDARDS**

A.  **Consolidation**

The Court must resolve pending motions to consolidate before appointing the lead plaintiff and approving lead counsel. According to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the 1934 Act] has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of lead plaintiff] until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA, however, did not displace the traditional legal standards for consolidation under Rule 42 of the Federal Rules of Civil Procedure (Rule 42). *See In re Fusion-io, Inc. Securities Litigation*, 2014 WL 2604991, at *2 (N.D. Cal. June 10, 2014).

Rule 42(a) provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

In determining whether to consolidate cases, the court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation. *Fusion-io*, 2014 WL 2604991, at *2 (citing *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)). Further, the district court has broad discretion under Rule 42 to consolidate cases pending in the same district. *Investors Research Co. v. United States Dist. Court for Cent. Dist.*, 877 F.2d 777, 777 (9th Cir. 1989).

B.  **Selection of Lead Plaintiff**

As explained by U.S. District Judge Lucy Koh in *Fusion-io*, the PSLRA governs the selection of a lead plaintiff in private securities class actions. *Fusion-io*, 2014 WL 2604991,

at *3. The lead plaintiff is to be the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, a three-step process determines the lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). First, the plaintiff who filed the earliest action governed by the PSLRA must publicize the pendency of the action, the claims made, and the purported class period "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I).[2] This notice must also alert the public that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).[3]

Second, the court selects the presumptive lead plaintiff. *See Cavanaugh*, 306 F.3d at 729-30 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). In order to determine the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id.* at 730 (footnote omitted). After the court identifies the plaintiff (or plaintiff group)[4] with the most to gain, the court determines whether that plaintiff, based on the information he or she provides, "satisfies the requirements of Rule 23(a) [of the Federal Rules of Civil Procedure (Rule 23(a))], in particular those of 'typicality' and 'adequacy.'" *Id.* If that plaintiff satisfies the requirements of Rule 23(a), that plaintiff becomes the presumptive lead plaintiff. *Id.* If not, the court selects the plaintiff with the next-largest financial stake and determines whether that plaintiff satisfies the requirements of

---

[2] This publication is to be made "[n]ot later than 20 days after the date on which the complaint is filed." 15 U.S.C. § 78u-4(a)(3)(A)(i).

[3] Those who wish to move the court for appointment as lead plaintiff must do so "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

[4] The PSLRA expressly provides that "the most adequate plaintiff" may be a "group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Rule 23(a). *Id.* The court repeats this process until it selects a presumptive lead plaintiff. *Id.* Further, "[t]he majority of the courts have permitted plaintiffs to aggregate their losses for purposes of the lead plaintiff determination," *Yanek v. Staar Surgical Company*, 2004 WL 5574358, at *4 (C.D. Cal. Dec. 15, 2004), although the Ninth Circuit has not yet expressed its view on this issue. *See Cavanaugh*, 306 F.3d at 731 n.8 ("While a 'group of persons' can collectively serve as a lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses.").

Third, those plaintiffs not selected as the presumptive lead plaintiff may "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). This is done by showing that the presumptive lead plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). If the court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirements, then it must return to step two, select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new presumptive lead plaintiff's showing. *Cavanaugh*, 306 F.3d at 731. The court repeats this process "until all challenges have been exhausted." *Id.* (citation and footnote omitted).

## C. Approval of the Lead and Liaison Counsel

Under the PSLRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen

differently." *Cohen v. U.S. Dist. Court,* 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

## BACKGROUND

As alleged by Mississippi PERS, PGE is an Oregon company with its principal executive offices in Portland, Oregon. Its common stock trades on the New York Stock Exchange (NYSE) under the symbol "POR." Mississippi PERS Compl. ¶ 11. PGE is an electric utility that produces, acquires, and distributes electricity to more than 900,000 customers throughout Oregon. Mississippi PERS Compl. ¶ 1. After the market closed on August 24, 2020, PGE disclosed that it was taking a $128 million loss in connection with its proprietary trading unit, which investors did not even know existed, as a result of bets it had taken in the energy trading market. *Id.*

Mississippi PERS further alleges that throughout the Class Period, PGE filed reports with the SEC and issued press releases that misrepresented the Company's energy trading activities and omitted material facts about the Company's internal controls over its trading practices and the risks and exposure arising from those practices. Mississippi PERS Compl. ¶ 28. On February 13, 2020, the first day of the Class Period, PGE filed with the SEC its annual report on Form 10-K for the 2019 fiscal year (the 2019 10-K). Mississippi PERS Compl. ¶ 16. The 2019 10-K repeatedly stated that PGE traded in the wholesale electricity marketplace for retail purposes only. Mississippi PERS Compl. ¶¶ 18-19. Defendant Lobdell signed the 2019 10-K, and both Lobdell and Pope certified the 2019 10-K pursuant to the Sarbanes-Oxley Act of 2002 (SOX). *Id.* ¶ 16. The 2019 10-K said that "PGE participates in the wholesale electricity marketplace in order to balance its supply of power to meet the needs of its retail customers,"

that "PGE does not engage in trading activities for non-retail purposes," and that the Company used a variety of instruments to commodity price risk. *Id*. ¶ 18. The 2019 10-K further assured investors that "PGE's Wholesale revenues are primarily short-term electricity sales to utilities and power marketers that consist of single performance obligations." *Id*. ¶ 17. Further, the 2019 10-K stated that Defendants Lobdell and Pope had evaluated the Company's disclosure controls and procedures, as well as its internal control over financial reporting, and concluded that they were effective. *Id*. ¶ 19.

Mississippi PERS also alleges that Defendants made numerous other statements during the Class Period that denied or omitted the fact that PGE was engaging in increasingly substantial proprietary trading activity without sufficient protection from commodity price risk, as it was forced to disclose at the end of the Class Period. On April 24, 2020, PGE filed its quarterly report on Form 10-Q with the SEC for the quarter ending on March 31, 2020 (the 1Q20 Report), which contained statements materially equivalent to false and misleading statements in the 2019 10-K regarding the Company's energy trading activities. Mississippi PERS Compl. ¶¶ 20-21. The 1Q20 Report also assured investors that Defendants Pope and Lobdell had evaluated the Company's disclosure controls and procedures and concluded that they were effective. Mississippi PERS Compl. ¶ 22. That same day, PGE issued a press release that addressed the impact of the COVID-19 pandemic on its downwardly adjusted earnings guidance but made no mention of any proprietary wholesale energy trading activity. Mississippi PERS Compl. ¶ 23.

On July 31, 2020, PGE filed its quarterly report on Form 10-Q for the quarter ending on June 30, 2020 (the 2Q20 Report), which Defendant Lobdell signed and which Defendants Pope and Lobdell certified pursuant to SOX. Mississippi PERS Compl. ¶¶ 23-26. In the 2Q20 Report

PAGE 7 – ORDER CONSOLIDATING CASES

and a press release issued that same day, PGE reaffirmed its previously given earnings guidance and omitted to disclose its substantial trading activity in the wholesale energy markets. Mississippi PERS Compl. ¶ 27. Like the 2019 10-K and the 1Q20 Report, the 2Q20 Report stated that PGE "participates in the wholesale electricity marketplace in order to balance its supply of power to meet the needs of its retail customers" and "d[id] not engage in trading activities for non-retail purposes." Mississippi PERS Compl. ¶ 25. The 2Q20 Report also stated that Defendants Pope and Lobdell had evaluated the Company's disclosure controls and procedures and found that they were effective. Mississippi PERS Compl. ¶ 26.

Throughout the Class Period, Defendants allegedly failed to disclose to investors that: (1) PGE had entered into substantial trades in the wholesale energy markets, with increasing volumes in 2020; (2) PGE lacked effective internal controls over its energy trading practices; (3) PGE downplayed the risks it faced in commodity price exposure; and (4) the Company's trading in the wholesale energy markets created significant negative exposure for PGE and was reasonably likely to incur significant losses. Mississippi PERS Compl. ¶ 28.

After the market closed on August 24, 2020, PGE announced: (1) that it had entered into a number of energy trades during 2020, with increasing volume accumulating in the second and third quarters, a previously-undisclosed proprietary trading unit; (2) that this energy trading had resulted in losses of $127 million; and (3) that PGE had placed two individuals on administrative leave and that its Board had formed a Special Committee to investigate, with the assistance of external advisors, the Company's energy trading practices and associated internal controls. Mississippi PERS Compl. ¶ 29. In an email to employees that same day, Defendant Pope characterized these energy trades as "ill conceived." *Id*. In response to this news, PGE's stock price allegedly fell by $3.51, or nearly eight percent, on unusually heavy volume as a direct

result of the announcement. Mississippi PERS Compl. ¶¶ 30-31. This wiped out of over $300 million in shareholder value. Mississippi PERS Compl. ¶ 31. As a result of Defendants' alleged wrongful acts and false statements and omissions, Mississippi PERS and other putative class members assert that they acquired PGE stock at artificially inflated prices and suffered significant losses.

## DISCUSSION

### A.  Consolidation

The Court has reviewed the complaints in the two pending putative class action securities fraud lawsuits against PGE and the individual defendants. Each lawsuit claims violations of the federal securities laws under Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 on behalf of classes of persons and entities that traded in PGE securities. The two actions assert essentially identical claims based on essentially identical factual allegations. They involve common questions of both law and fact, even though either would be enough under Rule 42(a). Finally, no party opposes consolidation. Thus, these two cases are well-suited for consolidation and are hereby consolidated.

### B.  Appointment of Lead Plaintiff

#### 1.  Procedural Requirements

The first complaint (*Hessel v. Portland Gen. Elec. Co.*, No. 3:20-cv-1523-SI) was filed on September 3, 2020, and the plaintiff in that action published notice to the purported class in *BusinessWire* that same day, which is within 20 days of the filing of the complaint. Both the first complaint and the notice alleged a class period of April 24, 2020 through August 24, 2020. The second complaint (*Cannataro v. Portland Gen. Elec. Co.*, No. 3:20-cv-1583-SI) alleged the same class period. The third complaint (*Public Employees' Retirement System of Mississippi v. Portland Gen. Elec. Co.*, No. 3:20-cv-1786-SI) brought the beginning of the alleged class period

PAGE 9 – ORDER CONSOLIDATING CASES

back to February 13, 2020 and kept the same end date of August 24, 2020. On October 29, 2020, the plaintiff in the first complaint voluntarily dismissed his lawsuit without prejudice. The Court is unaware of any legal basis for concluding that the differences in the duration of the alleged class periods are sufficient to find that the notice failed to comply with the PSLRA. The notice listed the claims, the originally pleaded class period, and advised putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. Only one shareholder timely moved for appointment, and the Court concludes that the original notice satisfies the procedural requirements of 15 U.S.C. § 78u-4(a)(3)(A).

### 2. Presumptive Lead Plaintiff

Only Mississippi PERS has moved for appointment as lead plaintiff. It has the greatest financial stake in the outcome of the case[5] and is the presumptive lead plaintiff.[6] Mississippi PERS should be appointed as lead plaintiff, provided it meets the requirements of Rule 23.[7] *Cavanaugh*, 306 F.3d at 729.

---

[5] District courts have generally equated financial interest with actual economic losses suffered. *See Fusion-io*, 2014 WL 2604991, at *4 (citing *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *3 (N.D. Cal. 2011)).

[6] "Appointing lead plaintiff on the basis of financial interest, rather than on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *Freudenberg*, 2008 WL 2876373, at *4 (quotation marks and citation omitted).

[7] "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730.

Looking only at the pleadings and declarations provided by Mississippi PERS,[8] it appears that Mississippi PERS has claims typical of the claims of the class because it purchased PGE stock at prices that were allegedly artificially inflated by the alleged misconduct. The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). *See generally* 7 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 22:24, at 107-108 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

It also appears that Mississippi PERS satisfies the adequacy requirement by not having any apparent conflicts of interest with the class members and by timely moving to be appointed as lead plaintiff, timely filing the requisite certifications, and selecting qualified proposed lead and liaison counsel who appear to have the requisite skills, experience, and competence to prosecute the claims vigorously and efficiently in the best interests of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Thus, at this second step, Mississippi PERS is the presumptive lead plaintiff.

### 3. Rebuttal of Presumptive Lead Plaintiff

The third step of the process gives "other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). As the Ninth Circuit has explained:

---

[8] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims." *Cavanaugh*, 306 F.3d at 730.

> In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery if they "demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).
>
> \*   \*   \*
>
> At the third stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy. The district court may need to hold an evidentiary hearing, and to make a renewed determination of typicality and adequacy.

*Id.* at 730-31 (first alteration in original). According to the PSLRA, the presumption of the most adequate plaintiff "may be rebutted *only* upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff [either] (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Here, no party has come forward to rebut the presumption of Mississippi PERS as lead plaintiff.

## C.    Approval of Lead and Liaison Counsel

Mississippi PERS requests that the law firm of GRANT & EISENHOFER P.A. (and specifically attorneys Daniel L. Berger and Caitlin M. Moyna) be appointed as lead counsel for the class and that the law firm of STOLL STOLL BERNE LOKTING & SHLACHTER P.C. (and specifically attorneys Keith S Dubanevich and Keil M. Mueller) be appointed as liaison counsel for the class. ECF 11. The Court has reviewed the qualifications of these two law firms and approves the request made by Mississippi PERS.

## CONCLUSION

The Court consolidates the two cases whose captions are shown in this Order. Going forward, each document filed by any party in this litigation shall bear the following caption: *In re*

*Portland General Electric Company Securities Litigation,* Case No. 3:20-cv-1583-SI. In addition, all filings in this case going forward shall be made only in the consolidated lead case. The Court appoints Mississippi PERS as the Lead Plaintiff for the putative class. The Court also appoints the law firm of GRANT & EISENHOFER P.A. as Lead Counsel for the putative class, as requested by the Lead Plaintiff. The Court further appoints the law firm of STOLL STOLL BERNE LOKTING & SHLACHTER P.C. as Liaison Counsel for the putative class, also as requested by the Lead Plaintiff. The Court GRANTS the motion filed by Mississippi PERS for consolidation, appointment as lead plaintiff, and approval of lead plaintiff's selection of counsel, ECF 11. Within 60 days of entry of this Order, the Lead Plaintiff shall file a consolidated amended complaint. Within 60 days thereafter, Defendants shall answer, move to dismiss, or otherwise respond to the consolidated amended complaint. If Defendants move to dismiss, the Lead Plaintiff shall have 60 days to respond to that motion, and Defendants shall have 45 days to reply.

**IT IS SO ORDERED**.

DATED this 10th day of November, 2020.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge