**Keith S. Dubanevich**, OSB No. 975200
**Keil M. Mueller**, OSB No. 085535
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 S.W. Oak Street, Suite 500
Portland, OR  97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email: kdubanevich@stollberne.com
        kmueller@stollberne.com

*Liaison Counsel for the putative class*

**Daniel L. Berger**, *admitted pro hac vice*
**Barbara Hart**, *admitted pro hac vice*
**Caitlin M. Moyna**, *admitted pro hac vice*
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone:    (646) 722 8500
Facsimile:    (646) 722 8501
Email: dberger@gelaw.com
        bhart@gelaw.com
        cmoyna@gelaw.com

*Lead Counsel for the putative class*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| IN RE: PORTLAND GENERAL ELECTRIC COMPANY SECURITIES LITIGATION | Case No. 3:20-cv-01583-SI<br><br>**<u>CLASS ACTION</u>**<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 23**<br><br>ORAL ARGUMENT REQUESTED |

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 3

II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE
      LITIGATION ..................................................................................................... 3

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
      APPROVAL ....................................................................................................... 6

      A.   DESCRIPTION OF THE SETTLEMENT AND PLAN OF ALLOCATION ................... 6

      B.   STANDARD FOR PRELIMINARY APPROVAL OF A SETTLEMENT
           UNDER RULE 23 ......................................................................................... 8

           1.   The Settlement Is the Result of Good Faith, Arm's-Length
                Negotiations by Well-Informed and Experienced Counsel ................... 10

           2.   The Settlement Provides a Substantial Benefit for the Class............... 11

           3.   The Relief Provided by the Settlement Is Adequate When
                Weighed Against the Risks of Litigation............................................. 12

IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS
      TO PERMIT DISSEMINATION OF THE NOTICE ......................................... 13

           1.   The Class Members Are So Numerous That Joinder
                Would Be Impracticable ................................................................... 14

           2.   There Are Questions of Law or Fact Common to the Class ................. 15

           3.   Lead Plaintiff's Claims Are Typical of the Class's Claims.................. 16

           4.   Lead Plaintiff Has Fairly and Adequately Protected the
                Interests of the Class ....................................................................... 17

           5.   Questions Common to the Class Predominate Over Individual
                Questions and a Class Action Is Superior to Other Available Means of
                Adjudication.................................................................................... 18

V.    NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ........................ 20

VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED............................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................. 13, 19, 20

*Beaver v. Tarsadia Hotels*,
    *No.* 11-CV-01842-GPC-KSC, 2017 WL 2268853 (S.D. Cal. May 24, 2017) ......................... 8

*Cannataro v. Portland General Electric Co., et al.*,
    No. 3:20-cv-01583-SI (D. Or.) ................................................................................................ 4

*Ciuffitelli v. Deloitte & Touche LLP*,
    No. 3:16-CV-00580-AC, 2019 WL 1441634 (D. Or. Mar. 19, 2019) .................................... 12

*In re Computer Memories Sec. Litig.*,
    111 F.R.D. 675 (N.D. Cal. 1986) .......................................................................................... 15

*In re EVCI Career Colls.*,
    No. 05-cv-10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................. 10

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ........................................................................................... 18

*Giles v. St. Charles Health Sys., Inc.*,
    *294 F.R.D. 585 (D. Or. 2013)* ............................................................................................... 15

*Gudimetla v. Ambow Educ. Hldg.*,
    *No.* CV125062PSGAJWX, 2014 WL 12594458 (C.D. Cal. Dec. 2, 2014) ..................... 16, 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 14

*Hessel v. Portland General Electric Co. et al.*,
    3:20-cv-01523-SI, No. 3:20-cv-01523-SI (D. Or.) .................................................................. 4

*In re Hyundai and Kia Fuel Economy Litig.*,
    926 F.3d at 556 ........................................................................................................................ 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 15-CV-540 JLS (KSC), 2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) ............... 15, 16, 21

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................................................... 8

*In re LendingClub Sec. Litig.*,
    No. C 16-02627 WHA, 2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ................................... 9

*Lomeli v. Sec. & Inv. Co. Bahr*,
  2013 WL 6170572 (2d Cir. Nov. 26, 2013)...............................................................22

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-00302 MRP, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ...............................11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .........................................................................................17

*Murphy v. Precision Castparts Corp.*,
  No. 3:16-CV-00521-SB, 2018 WL 3151426 (D. Or. June 6, 2018)........................................15

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) .............................................................................12

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) .............................................................................8

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir."1982).........................................................................................12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)...................................................................................................20

*In Re Portland General Electric Company Sec. Litig.*,
  Case No. 3:20-cv-1583-SI ..............................................................................................4

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019)..............................9, 10, 12

*Rihn v. Acadia Pharms. Inc.*,
  No. 15CV575 BTM DHB, 2015 WL 5227923 (S.D. Cal. Sept. 8, 2015) ...............................17

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................................................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) ..............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..........................................................................................10, 15, 20

*Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*,
  *97 F.R.D. 440 (D. Or. 1983)* .........................................................................................15

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)....................................9

**Statutes**

15 U.S.C. §78u-4(a)(7) ............................................................................................................22

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at
    528 (1986)..........................................................................................................................19

Lead Plaintiff Public Employees' Retirement System of Mississippi ("Lead Plaintiff" or "PERS") respectfully submits this unopposed motion for preliminary approval of settlement of its claims against defendants Portland General Electric Company ("PGE" or the "Company"), Maria Pope and James Lobdell (collectively, "Defendants").

## CERTIFICATION OF COMPLIANCE WITH LR 7-1

Defendants do not oppose this motion.

## MOTION

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff, through its legal counsel, moves the Court for the following relief:

1. Preliminary approval of a proposed class action settlement (the "Settlement") with Defendants on the terms set forth in the Stipulation and Agreement of Settlement dated July 11, 2021 (the "Stipulation")'

2. Provisionally certifying a settlement class ("Settlement Class") consisting of:

   All persons or entities who, directly or through an intermediary, purchased or otherwise acquired PGE common stock at any time during the Class Period. Excluded from the Settlement Class are: (i) Defendants; (ii) the present or former executive officers or members of the Board of Directors of PGE and their immediate family members (as defined in 17 C.F.R. §229.04 (Instructions (1)(a)(iii), substituting "PGE" for "the registrant")); (iii) any entity in which any Defendant has, or had during the Class Period, a controlling interest; and (iv) any affiliate of PGE. Also excluded from the Settlement Class are any persons and entities who exclude themselves by submitting a request for exclusion that is requested by the Court.

3. Preliminarily approving the Plan of Allocation;[1]

4. Approving the retention of the proposed Claims Administrator, Epiq Class Actions and Claims Solutions, Inc.;

---

[1] The Plan of Allocation is found beginning on page 14 of the "Notice," which is Exhibit A-1 to the Stipulation of Settlement, submitted herewith.

5.  Approving the form and method for providing notice of the Settlement to the Settlement Class; and

6.  Scheduling a hearing at which the Court will consider (a) final approval of the Settlement; (b) certification of the Settlement Class; (c) approval of the Plan of Allocation; (d) Class Counsel's request for fees and expenses; (e) entry of a Final Judgment and Order of Dismissal; and (f) rule upon such other matters as the Court may deem appropriate.

For the Court's consideration of this motion, Lead Plaintiff submits herewith the following memorandum in support and the Stipulation of Settlement and exhibits: (A-1) Notice (including the Plan of Allocation); (A-2) Summary Notice; and (A-3) Claims Form.

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

As set forth in the Stipulation of Settlement dated as of July 11, 2021, (the "Settlement Agreement"), Lead Plaintiff, on behalf of itself and the putative Class, has agreed to settle all claims asserted in the Consolidated Actions[2] against Defendants, in exchange for $6,750,000 in cash (the "Settlement Amount"). This proposed settlement ("Proposed Settlement") represents a significant recovery for the Class.

While Lead Plaintiff and its counsel believe that the claims against Defendants are meritorious and supported by the evidence gathered to date, they also recognize that, in the absence of a settlement, they faced the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after a trial of the Consolidated Action and the likely appeals that would ensue.  Throughout the litigation, Lead Plaintiff was fully apprised of what Lead Plaintiff's counsel believed were the strengths and weaknesses of the Action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

This dispute arises out of Defendant PGE's statements that the Company did not engage in energy trading for "non-retail purposes."  Lead Plaintiff contends that these statements were false and misleading in violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and that PGE did in fact engage in trading for non-retail purposes, in direct contravention to its public statements and filings.  These allegations were based on PGE's own public disclosures, as well as interviews with former PGE employees.  The Complaint asserts that PGE's statements about its trading activity were demonstrated to be false on August 24, 2020,

---

[2]All capitalized terms not otherwise defined shall have the meanings ascribed to them in §II.1 of the Stipulation of Settlement.

when PGE announced that the Company had sustained a loss of $127 million due to trading positions the Company had taken in the Southwest, which required PGE to purchase energy at sharply inflated prices to deliver the energy it had promised its contractual counterparties. Complaint ¶ 101. PGE further announced that it would not seek regulatory recovery for those losses. Complaint ¶ 82. Lead Plaintiff's Complaint also alleges that after the August 24, 2020 announcement, the price of PGE shares plummeted, causing substantial losses to investors. Complaint ¶ 8.

Lead Plaintiff filed its initial complaint on October 16, 2020, against Defendants in the District of Oregon. *Public Employees' Retirement System Of Mississippi v. Portland General Electric Company et al.* Case No. 3:20-cv-1786, ECF No. 1. The complaint asserted claims under Sections 10(b) and Section 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"). *Id.* Two other complaints were filed by purported shareholders of PGE: *Hessel v. Portland General Electric Co. et al.*, 3:20-cv-01523-SI, No. 3:20-cv-01523-SI (D. Or.), filed on September 3, 2020 (the "Hessel Action"), and *Cannataro v. Portland General Electric Co.*, *et al.*, No. 3:20-cv-01583-SI (D. Or.), filed on October 16, 2020 (the "Cannataro Action") (together, the "Related Actions").[3] On November 2, 2020, Lead Plaintiff Filed a Motion for Consolidation and of Appointment as Lead Plaintiff and Approval of Lead Counsel and Liaison Counsel. ECF No. 7. No other PGE shareholders filed a Lead Plaintiff Motion. On November 4, 2020, the Court granted Lead Plaintiff's motion and consolidated the Action and the Cannataro Action. ECF No. 16.[4] It also appointed PERS as Lead Plaintiff and Grant & Eisenhofer P.A. as Lead Counsel. *Id.* Lead

---

[3] On October 29, 2020, plaintiff in the Hessel Action voluntarily dismissed his complaint without prejudice.
[4] All future references to "ECF No." are to the docket in the earlier filed lead case captioned *In Re Portland General Electric Company Securities Litigation*, Case No. 3:20-cv-1583-SI.

Plaintiff then conducted a thorough investigation with the help of a paid, private investigator and interviewed several former PGE employees.

On January 11, 2021, Lead Plaintiff filed the First Amended Class Action Complaint (the "Complaint"), alleging that Defendants disseminated materially false and misleading statements regarding PGE's energy trading during the Class Period. ECF No. 26. This operative complaint alleged violations of § 10(b) of the Exchange Act and SEC Rule 10b-5 against Defendants, and violations § 20 of the Exchange Act against Maria Pope and James Lobdell. *Id*.

On March 12, 2021, Defendants filed a motion to dismiss the Complaint. ECF No.36. Lead Plaintiff filed its opposition on May 11, 2021. (ECF No. 92).

After filing their motion to dismiss, the Parties agreed to engage in confidential mediation to resolve the Action. Lead Plaintiff's Counsel engaged Frank Torchio of Forensic Economics to assist with evaluating potential damages to the putative Class in this Action. While Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit, Lead Plaintiff and Lead Counsel are also mindful of potential weaknesses in Lead Plaintiff's claims as well as the expense and length of continued proceedings necessary to prosecute the Action through trial.

On June 10, 2021, the Settling Parties and their counsel participated in a full day mediation with David Murphy of Philips ADR. Mr. Murphy joined Phillips ADR as a mediator in April 2017 and has three decades of experience representing plaintiffs and defendants before courts and arbitration panels throughout the United States. A retired partner of Wachtell, Lipton, Rosen & Katz, David Murphy's practice focused on litigating and resolving complex disputes involving investors, consumers, regulators and leading businesses. Following the mediation, Mr. Murphy made a mediator's proposal to resolve the Action, which the Settling Parties each accepted on a double-blind basis on June 13, 2021. The Settling Parties thereafter executed a Term Sheet

5

memorializing their agreement, which included, among other things, the Settling Parties'
agreement to fully and finally resolve the Action in return for a settlement payment of $6,750,000
for the benefit of the Class, subject to the negotiation of the terms of the Stipulation of Settlement
and approval by the Court.  On June 25, 2021, counsel for the parties notified the Court that the
parties had reached an agreement in principle.

## III.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.     Description of the Settlement and Plan of Allocation

The Proposed Settlement provides that PGE or its insurance carriers will pay, on behalf of
all Defendants, $6.75 million in cash into an Escrow Account for the benefit of the Settlement
Class.  This consideration, after deduction of any attorneys' fees and litigation expenses, as
provided for in the Settlement Agreement or approved by the Court, and less any fees associated
with notifying the class and administering the settlement consideration (*i.e.*, the "Net Settlement
Fund"), will be distributed among the Settling Class Members who submit timely and valid Proof
of Claim and Release Forms in accordance with the Plan of Allocation set forth in the Notice.
Lead Plaintiff believes that the Proposed Settlement is an excellent recovery based on the claims
asserted in the Consolidated Actions, and is in all respects, fair, adequate, reasonable, and in the
best interests of the Settlement Class.

Under the Plan of Allocation, the Claims Administrator, selected by Lead Plaintiff based
on its experience in handling securities cases and its location in Oregon, will calculate each
Authorized Claimant's Recognized Loss based on the information supplied in each person's Proof
of Claim.  The Plan of Allocation allocates the Net Settlement Fund to Settling Class Members on
a *pro rata* bases after determining the Settling Class Members' Recognized Loss Amounts.  The
Plan of Allocation takes into account the consideration that an Authorized Claimant used to

purchase his/her/its PGE shares and, if the Authorized Claimant sold the shares, when the sale occurred.

The Plan of Allocation was determined with the assistance of Lead Plaintiff's expert, Frank Torchio, of Forensic Economics, who has more than 30 years of experience in assisting with securities damages calculations and plan of allocation development. Lead Plaintiff submits that the Plan of Allocation is fair and reasonable and should be approved together with the Settlement at the Settlement Hearing.

Specifically, the Plan of Allocation calculates a Recognized Loss Amount in the following ways for Authorized Claimants who purchased shares of Portland General Electric common stock purchased or acquired on or between February 13, 2020, through and including August 24, 2020:

1.    For Investors who sold prior to August 25, 2020, the recognized loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase minus the alleged inflation per share at the time of sale; and (ii) the difference between the purchase price and the selling price.

2.    For investors who sold from August 25, 2020, through November 20, 2020, the recognized loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase; and (ii) the difference between the purchase price and the average closing price between August 25, 2020 and the date of sale.

3.    For investors who retained at the close of trading on November 20, 2020, the recognized loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase; and (ii) the difference between the purchase price and $38.35.

### B.        Standard for Preliminary Approval of a Settlement Under Rule 23

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims.  "The initial decision to approve or reject the settlement under Fed. R. Civ. P. 23(e) is committed to the sound discretion of the trial judge." *Beaver v. Tarsadia Hotels, No.* 11-CV-01842-GPC-KSC, 2017 WL 2268853, at *1 (S.D. Cal. May 24, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  In the Ninth circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d at 556 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

Approval under [Rule] 23(e) involves a "two-step process" in which the Court first determines "whether class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121–22 (N.D. Cal. 2016).  In considering preliminary approval, "the Court must make a 'preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th Cir. 2012); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1064 (N.D. Cal. 2017) (finding that, "Courts may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate").  "Some district courts "have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness,' looking at factors such as whether the settlement is the product of non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *O'Connor* 201 F. Supp. 3d, 1122 (N.D. Cal. 2016).  "Preliminary approval is appropriate if 'the

8

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 1367336, at *2 (N.D. Cal. Mar. 16, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

In conducting a preliminary approval inquiry, a court considers both the procedural and substantive fairness. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "Courts within the Ninth Circuit 'put a good deal of stock in the product of an arms-length [*sic*], non-collusive, negotiated resolution.'" *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *3 (D. Or. July 29, 2019) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). The opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (holding that the procedure for reaching settlement was fair and reasonable where, "[e]xperienced *counsel* on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time."). Finally, "another factor weighing in favor of preliminary approval is that the proposed settlement agreement came about as a result of extensive mediation efforts....*" In re LendingClub Sec. Litig., No. C 16-02627* WHA, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018*); see also In re Zynga Inc. Sec. Litig.,* No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015*).

Moreover, under the PSLRA, a settlement reached "under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness." *In re EVCI Career Colls.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### 1. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart*, 396 F.3d at 116 (noting strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *3 (D. Or. July 29, 2019) (same).

Here, the Settlement is the product of informed arm's-length negotiations, including mediation efforts. As highlighted above, counsel for Defendants contacted Lead Plaintiff's counsel after filing their motion to dismiss, and the parties agreed to enter into mediation. Prior to the mediation, Lead Plaintiff's counsel engaged an expert to assist with determining what the recoverable damages at trial might be. After several additional weeks of negotiations, the parties were able to reach an agreement.

Moreover, in determining the good faith of this settlement proposal, the Court should consider the judgment of the parties involved in negotiating it. Lead Counsel has extensive experience in prosecuting securities class actions throughout the county and is among the nation's leading securities class action litigation firms. Accordingly, their judgment that the Settlement is in the best interest of the Class should be given considerable weight. *See Maine State Ret. Sys. v.*

10

*Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP, 2013 WL 6577020, at *15 (C.D. Cal. Dec. 5, 2013). ("Counsel are most closely acquainted with the facts of the underlying litigation" and are therefore in an ideal position to assess the fairness of the settlement offer."). This Action also included the active participation of the Court-appointed Lead Plaintiff the Public Employees' Retirement System of Mississippi – a sophisticated institutional investor. *See Id.*

Given the particular circumstances of this Action, the Court can conclude that the Parties and their counsel were well-informed prior to reaching the Settlement. The fact that the Settlement is the product of arm's-length negotiations, has been approved by the Lead Plaintiff, and was entered into by experienced and informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. The Settlement is, therefore, presumptively fair, reasonable and adequate.

### 2.  The Settlement Provides a Substantial Benefit for the Class

The Settlement provides for a Settlement Fund of $6,750,000 in cash. This recovery is a substantial result for the Class, especially in light of the history of this case and the risks of continued litigation and trial. Thus, the benefit of the present Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, most likely years into the future.

The Settlement Amount, after reduction for Court approved attorneys' fees and expenses, will be allocated to eligible members of the Class based on the Plan of Allocation described above. The Plan of Allocation being proposed by Lead Plaintiff, as set forth in the Notice, was developed by Lead Plaintiff's damages expert in consultation with Lead Counsel and provides a fair and reasonable method to allocate the Settlement among Class Members who submit valid Claim Forms.

The Proposed Settlement will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.  Similar plans of allocation repeatedly have been approved by courts in this District.  *See Ciuffitelli v. Deloitte & Touche LLP,* No. 3:16-CV-00580-AC, 2019 WL 1441634, at *17 (D. Or. Mar. 19, 2019)*, report and recommendation adopted,* No. 3:16-CV-00580-AC, 2019 WL 2288432 (D. Or. May 29, 2019)*; In re Premera Blue Cross Customer Data Sec. Breach Litig*., No. 3:15-MD-2633-SI, 2019 WL 3410382, at *22.

The Proposed Settlement's benefit to the Class and the fact that all Class Members will be treated the same under the proposed Plan of Allocation support preliminary approval of the Settlement.

### 3.  The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014)*.; see also Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir."1982). ("[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.") The terms of the proposed Settlement here are clearly "within the range of possible approval", especially given the very substantial risks and expense plaintiffs face in continuing to litigate this case. *Initial Pub. Offering*, 243 F.R.D. at 87.)

Although Lead Plaintiff and its counsel believe that the claims asserted in the Action against Defendants are meritorious, continued litigation was risky.  In particular, Lead Plaintiff faced difficulties in surviving Defendants' motion to dismiss, which argued that  Lead Plaintiff's claim arising under Section 10(b) failed because it did not allege (a) an actionable false statement

12

or omission, (b) scienter, and (c) loss causation.  ECF No. 36.  If Lead Plaintiff had lost any of these arguments, all of its claims, or a substantial portion of it claims, would have been eliminated at the motion to dismiss phase.

Even if it had survived the motion to dismiss, Lead Plaintiff faced significant hurdles associated with engagement in lengthy and challenging discovery and would likely have faced additional challenges at the summary judgment phase.  After those significant hurdles were surpassed, Lead Plaintiff would have faced a complex trial with issues that are likely to be unfamiliar to the fact-finders, and potential appeals following any favorable judgment, processes which would no doubt take years to resolve.  The Court should thus consider that the Settlement provides for payment to the Class now – without incurring any addition costs, rather than a speculative payment years down the road.  *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44.   In light of the foregoing factors, Lead Counsel and Class Representatives believe the proposed Settlement is in the best interests of the Class and respectfully submit that the Settlement falls well within the range of possible approval.

For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Class.

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO PERMIT DISSEMINATION OF THE NOTICE

In addition to determining whether the proposed Settlement is fair and reasonable, the Court must consider whether to certify the Settlement Class conditionally for settlement purposes.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process.  4 Newburg on Class Actions S. 13:18 (5th ed. 2012).

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the members of the class are so numerous that joinder would be impracticable; (2) "commonality" – there are common questions of law and fact that apply to all class members; (3) "typicality" – the claims of the proposed class representative are typical of the class, and there are no unique defenses against the class representative; and (4) "adequacy" – the class representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

In addition, certification of a class for settlement purposes requires a showing that the requirements of Rule 23(b)(3) are met: that questions of law or fact common to the members of the class predominate over any individual issues of rule or law, and that a class action is superior to other available methods to adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3).

Here, the parties have stipulated to the certification of the Settlement Class for settlement purposes only.  Settlement Agreement ¶ 3.1.  Lead Plaintiff thus requests that the Court certify the Settlement Class defined in the Stipulation, comprising "all persons or entities who, directly or through an intermediary, purchased or otherwise acquired PGE common stock at any time during the period of February 13, 2020 through August 24, 2020, inclusive."  Settlement Agreement ¶ 1.36.  Here, the proposed Settlement Class meets the requirements of and satisfied Rule 23(a) and 23(b)(3).

### 1.  The Class Members Are So Numerous That Joinder Would Be Impracticable

Rule 23(a)(1) requires a class to be so large that joinder of all its members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  The prerequisite of numerosity is discharged if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In the Ninth Circuit, "40 class members are generally sufficient to

meet the numerosity requirement." *Giles v. St. Charles Health Sys., Inc.,* 294 F.R.D. 585, 590 (D. Or. 2013)*; see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.,* 97 F.R.D. 440, 443 (D. Or. 1983) (same)*;* Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action where a "large number of [securities] were outstanding and traded during the relevant period." *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (KSC), 2021 WL 1579251, at *3 (S.D. Cal. Apr. 22, 2021) (quoting *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009)) ("[I]t is not necessary to state the exact number of class members when the plaintiff's allegations 'plainly suffice' to meet the numerosity requirement," and a court "may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of [the class period]." ).

## 2.  There Are Questions of Law or Fact Common to the Class

Commonality requires that "there be "questions of law or fact common to the class." *Id*. at 4. Securities class actions are particularly well-suited to class treatment and "courts often find commonality 'in securities class actions where investors sue for misrepresentations or omissions that had an impact on stock price.'" *Murphy v. Precision Castparts Corp*., No. 3:16-CV-00521-SB, 2018 WL 3151426, at *2 (D. Or. June 6, 2018); *In re Computer Memories Sec. Litig.,* 111 F.R.D. 675, 679 (N.D. Cal. 1986).  Commonality does not mean that all class members must make identical claims and arguments." *Murphy,* No. 3:16-CV-00521-SB, 2018 WL 3151426, at *2. "What matters to class certification is not the raising of common 'questions' ... but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). Commonality is satisfied if the plaintiffs charge

defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *Khoja,* 2021 WL 1579251, at *4.

Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in PGE's public statements, whether Defendants acted with due care in misrepresenting or omitting to state material information concerning PGE, and the extent of damages sustained by members of the Class and the appropriate measure of damages.

### 3.  Lead Plaintiff's Claims Are Typical of the Class's Claims

Putative class representatives' claims must also be typical of those of the class members. Fed. R. Civ. P. 23(a)(3).  The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably coextensive with those of absent class members." *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (KSC), 2021 WL 1579251, at *4 (S.D. Cal. Apr. 22, 2021). Typical does not mean identical. *Gudimetla v. Ambow Educ. Holding, No.* CV125062PSGAJWX, 2014 WL 12594458, at *3 (C.D. Cal. Dec. 2, 2014) ("Typicality under rule 23(a)(3) requires a showing that the named plaintiffs are members of the class they represent and that their claims are "reasonably coextensive with those of absent class members," but not necessarily "substantially identical.*"*).

Lead Plaintiff's claims are typical of those of the Settlement Class.  PERS purchased PGE common stock during the Class Period, ECF No. 8-1 (Certification on Behalf of PERS and Schedule A demonstrating purchases and sales of PGE shares form the period of February 13, 2020 through August 24, 2020 and was damaged when the alleged corrective disclosure was revealed to the public.  Lead Plaintiff satisfies the typicality requirement.

### 4. Lead Plaintiff Has Fairly and Adequately Protected the Interests of the Class

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. In the Ninth circuit, this has traditionally entailed a two-pronged inquiry: first, that the interests of the representative party not conflict with the interests of Settlement Class Members, and second, that the representative party's counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000). Lead Plaintiff is adequate if its interests do not conflict with those of the class. *Rihn v. Acadia Pharms. Inc.,* No. 15CV575 BTM DHB, 2015 WL 5227923, at *4 (S.D. Cal. Sept. 8, 2015). Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

Lead Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class. Lead Plaintiff has submitted certifications consistent with the PSLRA, indicating that it reviewed the complaint, that it is willing to represent the Class, and that it will accept no payment for serving as representative plaintiffs beyond their pro rata shares of any recovery. ECF No. 8-1. Lead Plaintiff is seeking, on its own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. No evidence exists of any conflict of interests with the Settlement Class. Thus, Lead Plaintiff is an adequate class representative.

Rule 23(g) also requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and

17

(4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

The Court-appointed firm serving as Lead Counsel, Grant & Eisenhofer P.A. ("Grant & Eisenhofer") is experienced in prosecuting class actions having successfully prosecuted securities class actions in this Court and throughout the country.  Grant & Eisenhofer is routinely appointed as class counsel in courts across the nation in securities class actions.  Lead Counsel's firm resumes were previously submitted to the Court.  ECF No. 8.   The Settlement was reached only after Lead Counsel investigated and drafted the Complaint and arduously opposed Defendants' motion to dismiss.  ECF No. 41.  Counsel spent considerable time on this action for the benefit of PGE investors including: conducting a thorough investigation with the help of a paid, private investigator; opposing Defendants' motion to dismiss; retaining a damages expert to help assess the total potential classwide damages in the action and participating in a day long mediation session with Defendants' counsel. Lead Counsel's significant securities class action experience make it knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation.  Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### 5.   Questions Common to the Class Predominate Over Individual Questions and a Class Action Is Superior to Other Available Means of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs satisfy the predominance and superiority criteria.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. 591. When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). Here, no question exists that issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. If each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions.  *Amchem*, 521 U.S. at 625.

Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Plaintiffs' and the Settlement Class members' claims. The factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. All outstanding related cases have been consolidated into this Action, in an appropriate forum convenient for all parties.  Additionally, Lead Plaintiff believes no difficulties will be encountered in the management of this class action and Settlement.

19

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without securities class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available *See Gudimetla*, 2014 WL 12594458, at *4 (finding superiority where "[t]he alternative to a class action—individualized actions—would be inefficient, costly, and unwieldy."). *See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). Moreover, a class action avoids the possibility of repetitious litigation and efficiently resolves the claims of the entire Settlement Class at once, conserving judicial resources. Thus a class action is the superior method of adjudication.

Plaintiffs have satisfied all the requirements of Rules 23(a) and (b)(3). The Court should preliminarily certify the Settlement Class for settlement purposes.

## V. NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). There are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart*, 396 F.3d at 113-14. Moreover, the content of a notice is generally found to be satisfactory if it "'generally describes

the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Khoja*, 2021 WL 1579251, at *8  (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

The proposed Notice (attached as Exhibit A-1 to the Settlement Agreement) advises Class Members of, *inter alia*: (i) the essential terms of the Settlement; (ii) the proposed Plan of Allocation; and (iii) information regarding Lead Counsel's forthcoming motion for an award of attorneys' fees and expenses.[5]  The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures and deadlines for: (i) submitting a Claim Form and (ii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses.  As discussed below, no second opportunity for opting out of the Class is necessary under the particular circumstances of this Action.  *See* §V below.

The content of the proposed Notice also meets the requirements of the PSLRA.  In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); and (iii) a brief statement that explains the reasons why the Parties are proposing the Settlement.  *See* 15 U.S.C. §78u-4(a)(7).

---

[5]  As set forth in the Notice, Lead Counsel, on behalf of Plaintiffs' Counsel, will formally move the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for expenses paid or incurred in the Action in an amount not to exceed $150,000, plus interest. In addition, Lead Plaintiff may seek reimbursement of up to an aggregate amount not to exceed $10,000 for its reasonable costs and expenses incurred in representing the Class and litigating the Action.

As outlined in the Preliminary Approval Order, the proposed Claims Administrator, Epiq Global, under the direction of Lead Counsel, will notify Class Members of the proposed Settlement. Epiq was selected because of its significant experience in serving as the claims administrator in securities class actions and its location in the state of Oregon.

Epiq prepared a detailed notification procedure based on its past experience. Thus, the notification process will rely primarily on a broad marketing campaign targeted at publications designed to reach as many PGE shareholders as possible. As such, Epiq will publish the Summary Notice in both Investors Business Weekly and PR Newswire.

The Notice and Claim Form substantially in the forms of Exhibits A-1 and A-2 to the Settlement Agreement, will be accessible to all interested persons who view the links on the above-referenced sites. In addition, the Claims Administrator will mail the Notice and Claim Form to all persons and entities who can be identified through reasonable effort. In addition, the Claims Administrator will cause copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, to be posted on the Settlement website, www.portlandgeneralelectricsettlement.com.

In sum, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Lomeli v. Sec. & Inv. Co. Bahr.*, 2013 WL 6170572, at *2 (2d Cir. Nov. 26, 2013) (summary order). Accordingly, Lead Counsel respectfully submits that the proposed notice program is adequate and should be approved by the Court.

**VI.    THE PROPOSED SCHEDULE SHOULD BE APPROVED**

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement.  The parties respectfully submit the following schedule for the Court's consideration, as set forth in the Preliminary Approval Order.

| Event | Date |
|-------|------|
| Commence Mailing of Notice | 14 days after entry of Notice Order ("Notice Date") |
| Publish Summary Notice | 10 days after Notice Date |
| Service by Lead Counsel on Defendants' Counsel of Affidavit Confirming Notice | 7 days prior to Settlement Hearing |
| Deadline to Submit Proofs of Claim and Release | 120 days after Notice Date |
| Deadline to Request Exclusion from the Settlement Class | 21 days prior to Settlement Hearing |
| Deadline to File Objections to the Proposed Settlement | 21 days prior to Settlement Hearing |
| Lead Plaintiff to File Motion for Approval of the Settlement and Lead Counsel to File Application for Attorneys' Fees and Expenses | 30 days prior to Settlement Hearing |

Dated: July 16, 2021

Respectfully submitted,

**STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.**

_/s/ Keil M. Mueller_
Keith Dubanevich, OSB No. 975200
Keil M. Mueller, OSB No. 085535
209 SW Oak Street, Suite 500
Portland, OR  92304
Telephone: (503) 227-1600
Portland, OR 97204
kdubanevich@stollberne.com
kmueller@stollberne.com

*Liaison Counsel for Lead Plaintiff and the Proposed Class*

**GRANT & EISENHOFER P.A.**
Daniel L. Berger (admitted pro hac vice)
Barbara Hart (admitted pro hac vice)
Caitlin M. Moyna (admitted pro hac vice)
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile:  (646) 722-8501
dberger@gelaw.com
bhart@gelaw.com
cmoyna@gelaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Proposed Class*