# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re PORTLAND GENERAL ELECTRIIC SECURITIES LITIGATION | Case No. 3:20-cv-1583-SI (Lead)<br>Case No. 3:20-cv-1786-SI (Consolidated)<br><br>**OPINION AND ORDER APPROVING SETTLEMENT, ATTORNEY'S FEES, AND EXPENSES** |

Keith S. Dubanevich and Keil M. Mueller, Stoll Stoll Berne Lokting & Shlachter pc, 209 SW Oak Street. Suite 500, Portland, OR 97204; Daniel L. Berger, Barbara Hart, and Caitlin M. Moyna, Grant & Eisenhofer pa, 485 Lexington Avenue, 29th Floor, New York, NY 10017. Of Attorneys for Plaintiffs and the Putative Class.

David B. Markowitz, Dallas S. DeLuca, and Stanton R. Gallegos, Markowitz Herbold pc, 1455 SW Broadway, Suite 1900, Portland, OR 97201; Susan L. Salzstein, Alexander C. Drylewski, Shaud G. Tavakoli, Skadden, Arps, Slate, Meagher & Flom llp, One Manhattan West, New York, NY 10001; and Peter B. Morrison and Virginia Milstead, Skadden, Arps, Slate, Meagher & Flom llp, 300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Lead Plaintiff Public Employees Retirement System of Mississippi brings this securities fraud class action individually and on behalf of others similarly situated against Portland General Electric Company, its President and Chief Executive Officer Maria Pope, and its Chief Financial Officer James F. Lobdell (collectively, Defendants). In Claim One, Lead Plaintiff alleges that

Defendants violated Section 10(b) of the Securities and Exchange Act (Act) and Rule 10b-5

promulgated thereunder. In Claim Two, Lead Plaintiff alleges that Defendants Pope and Lobdell

violated Section 20(a) of the Act. Defendants filed a motion to dismiss, and the Lead Plaintiff

responded. Before Defendants filed their reply brief, however, the parties reached a Stipulation

of Settlement dated July 10, 2021 (Settlement Agreement).[1] ECF 45-1. The Court preliminarily

approved the Settlement Agreement and appointed Grant & Eisenhofer, P.A. as Lead Counsel for

the Settlement Class. ECF 46. Now before the Court is Lead Plaintiff's unopposed Motion for

Final Approval of Class Action Settlement and Lead and Liaison Counsel's (collectively, Class

Counsel) Motion for Award of Attorney's Fees and Expenses. ECF 50.

## BACKGROUND

This action arises from Defendants' alleged misrepresentations about PGE's energy

trading practices. Lead Plaintiff alleges that PGE maintained a risk-averse, conservative profile,

that lead investors and analysts to characterize PGE as a low-risk investment. Lead Plaintiff

further alleges that this low-risk profile was especially important to PGE given its relationship

with Enron before Enron filed for bankruptcy. As with other power companies, PGE allegedly

traded within the energy market to hedge against the uncertainty of future energy prices. This

price-hedging form of energy trading is known as trading for "retail purposes." Lead Plaintiff

also alleges that beginning in early 2020, PGE engaged in energy trading for "non-retail

purposes," that is, energy trading for the purpose of generating profit. As a result, Lead Plaintiff

contends, PGE's statements in its filings with the Securities and Exchange Commission stating

that PGE did not engage in energy trading practices for "non-retail purposes" were false and

---

[1] Unless otherwise indicated, all capitalized terms used in this Opinion and Order have the same meanings as defined in the Settlement Agreement.

misleading. In August 2020, PGE announced that it suffered a $127 million loss due to these high-risk non-retail trades. After PGE's announcement, its stock price dropped from $41.64 to $37.16. This lawsuit followed. As noted above, the parties have reached a settlement, which is before the Court for final approval.

## DISCUSSION

### A. Settlement Class Certification

#### 1. Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure. ECF 46. The Court is satisfied that the notice procedure was carried out according to the applicable standards. The Court finds that notice of the Stipulation was given to the Settlement Class by the best means practicable under the circumstances, including mailing the Notice to Class Members, posting the Notice, Proof of Claim, Stipulation, and Preliminary Approval Order on a dedicated website, and publishing the Summary Notice in *Investor's Business Daily* and on *PR Newswire*.

The Notice provided Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Stipulation; (4) the fact that no affirmative action was needed to receive the benefit of class membership, but notice that Class Members could opt out of the Settlement Class; (5) an explanation of Class Members' opt-out rights, the date by which Class Members must opt out, and information about how to do so; (6) explaining the release of claims should Class Members choose to remain in the Settlement Class; (7) instructions about how to object to the Stipulation and the deadline for Class Members to submit any objections; (8) instructions about how to object to the requested attorney's fees, expenses, and service awards and the deadline for Class Members to submit any objections;

(9) the date, time, and location of the final approval hearing; (10) the internet address for the

settlement website and the telephone number from which Class Members could obtain more

information on the Stipulation; (11) contact information for the settlement administrator and the

Court; and (12) information about how Lead Counsel and the Class Representative would be

compensated. The notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th

Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563

F.3d 948, 962 (9th Cir. 2009))).

　　　The form and method of notifying the Settlement Class fairly and adequately advised

Class Members of all relevant and material information about the Action and the proposed

Stipulation. The Court finds that the notice satisfies the requirements of due process and Rule 23

and the Private Securities Litigation Reform Act.

### 2.  Rule 23 Requirements

　　　To certify either a settlement class or a litigation class, the requirements of Rule 23 of the

Federal Rules of Civil Procedure must be satisfied. *See Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1019 (9th Cir. 1998). Rule 23 of the Federal Rules of Civil Procedure affords this

Court with "broad discretion over certification of class actions . . . ." *Stearns v. Ticketmaster

Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011). A plaintiff seeking class certification must satisfy

each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of

representation—and one subsection of Rule 23(b). *See, e.g.*, *Lozano v. AT & T Wireless Servs.,

Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23 sets forth more than a "mere pleading standard."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). On the other hand, Rule 23 provides

district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). In considering a litigation class, the court "must be concerned with manageability at trial," whereas in considering a settlement class, "such manageability is not a concern . . . [because], by definition, there will be no trial." *Id.* at 556-57. "[I]n deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses." *Id.* at 557. This determination "demand[s] undiluted, even heightened, attention in the settlement context" because the court "lack[s] the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) ("When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention.").

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

Plaintiffs move without objection to certify the Settlement Class defined as:

> All persons or entities who, directly or through an intermediary, purchased or otherwise acquired common stock of PGE at any time during the period of February 13, 2020 through August 24, 2020, inclusive. Excluded from the Settlement Class are: (i) Defendants; (ii) the present or former executive officers or members of the Board of Directors of PGE and their immediate family members (as defined in 17 C.F.R. § 229.404 (Instructions to Item 404(a)(1)(a)(iii), substituting "PGE" for "the registrant")) of any excluded person; (iii) any entity in which any Defendant has, or had during the Class Period, a controlling interest; and (iv) any affiliate of PGE. Also excluded from the Settlement Class are any persons and entities who exclude themselves by submitting a request for exclusion that is accepted by the Court.

The Court previously agreed that the Class met the requisite factors in conditionally certifying the Class for settlement purposes in the preliminary approval of the Settlement. The Court, however, must now conduct a "rigorous" analysis of the Rule 23 factors.

### a. Numerosity

Rule 23(a)(1) requires Plaintiffs to demonstrate that the proposed class "is so numerous that joinder of all members is impracticable." Rule 23(a)(1) provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement. Instead, the court must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). In general, classes of 20 members or fewer are too small, classes of 21 to 40 members may or may not be sufficiently numerous depending on the facts of the case, and classes of 41 and higher are sufficiently numerous. *See* 5 James Wm. Moore et al., *Moore's Federal Practice - Civil* § 23.22(1)(b) (3d ed. 2021). In this district, there is a "rough rule of thumb" that more than 40 class members meets the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (17th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess

of 40 generally satisfy the numerosity requirement."); 5 *Moore's Federal Practice - Civil*

§ 23.22(1)(b) ("A class of 41 or more is usually sufficiently numerous. Once again, many courts

have ruled that classes with more than 40 members satisfy the numerosity requirement."). The

claims administrator mailed over 67,000 Notice packets to potential Class Members, which

shows there are likely thousands of Class members. The Court therefore finds that the Class

meets the numerosity requirement.

### b. Commonality

Rule 23(a)(2) states that class certification is appropriate only when the case presents

"questions of law or fact common to the class." To satisfy the commonality requirement,

Plaintiffs must show that the class members suffered the "same injury" and that their claims

depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350. "That common contention,

moreover, must be of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Id.* But class members need not have every issue in common.

Commonality requires only "a single significant question of law or fact" in common. *Mazza v.*

*Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *see also Wal-Mart*, 564 U.S. at 359.

"These common questions may center on 'shared legal issues with divergent factual predicates

[or] a common core of salient facts coupled with disparate legal remedies.'" *Jimenez v. Allstate*

*Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (alteration in original) (quoting *Hanlon*, 150 F.3d

at 1019).

Lead Plaintiff alleges that the Class incurred losses due to Defendants'

misrepresentations about PGE's high-risk energy trading practices. Specifically, Lead Plaintiff

alleges that Defendants repeatedly represented that PGE maintained only low-risk trading

practices when in fact, between February and August of 2020, PGE allegedly engaged in risky

energy trading for non-retail purposes. There are common issues of law and fact stemming from these allegations, including whether Defendants materially misrepresented the risk of PGE's trading practices, whether Defendants made any alleged misrepresentations with an intent to deceive, and whether any alleged misrepresentation caused Plaintiffs' harm. The Court finds that the Settlement Class meets the commonality requirement.

### c. Typicality

To meet the typicality requirement, Plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.3d at 508).

Lead Plaintiff's claims are based on the same conduct as the claims of the Settlement Class and there is nothing to suggest that Lead Plaintiff's claims are not coextensive with the Class. Thus, the Class meets the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any

conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020; *see also* Fed. R. Civ. P. 23(g) (setting out factors to consider before appointing class counsel). The adequacy requirement is based on principles of constitutional due process. Accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Lead Plaintiff is an adequate representative of the class because there is no evidence to suggest that Lead Plaintiff has any conflicts of interest with other Class members. Lead Counsel has extensive experience prosecuting securities fraud class actions and has vigorously pursued the interests of the Class by conducting a private investigation, preparing a Consolidated Amended Complaint in anticipation of Defendants' motion to dismiss, opposing Defendants' motion to dismiss, and participating in mediation. Thus, the Court finds that the Lead Plaintiff and Lead Counsel are adequate to represent the Class.

### e. Predominance

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 963-64 (simplified). The focus of this inquiry, however, is on "*questions* common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original). Plaintiffs need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Id.* at 468.

"[T]here is substantial overlap between" the test for commonality under Rule 23(a)(2) and the predominance test under 23(b)(3). *Wolin*, 617 F.3d at 1172. The predominance test, however, "is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (citation omitted) (quoting *Amchem*, 521 U.S. at 623-24). To determine whether common questions predominate, the Court begins with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

The common questions relevant to Plaintiffs' claims predominate over any issues relevant to any individual Plaintiff. Plaintiffs' claims share essential factual issues including whether Defendants misrepresented PGE's trading practices, whether Defendants made any misrepresentations with an intent to deceive, and whether any misrepresentations caused Plaintiffs' losses. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). Thus, the Class meets the predominance requirement.

### f.  Superiority

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). To make this determination, a court looks to "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In turn, this inquiry "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* The Ninth Circuit recognizes that "[d]istrict courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation, and so must be given wide discretion to evaluate superiority." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (quotation marks and citation

omitted). Relating to superiority, the purpose of Rule 23(b)(3) is "to allow integration of

numerous small individual claims into a single powerful unit." *Id.* at 722. This allows plaintiffs

that otherwise likely would be "unable to proceed as individuals because of the disparity between

their litigation costs and what they hope to recover. . . . 'to pool claims which would be

uneconomical to litigate individually.'" *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v.

Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (quoting *Phillips Petroleum Co. v.

Shutts*, 472 U.S. 797, 809 (1985)).

Rule 23(b)(3) provides four non-exhaustive factors for courts to consider. These factors

are:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

As to the first factor, "[w]here recovery on an individual basis would be dwarfed by the

cost of litigating on an individual basis, this factor weighs in favor of class certification."

*Wolin*, 617 F.3d at 1175. The cost of litigating individual securities fraud claims is high when

compared to the amount of damages at stake for putative class members. *See In re Synchrony

Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021) ("Securities fraud cases are often complex

and costly . . . ."). Accordingly, "[b]ecause individual damages pale in comparison to the costs of

litigation, this factor points toward certification." *In re Anthem, Inc. Data Breach Litig.*, 327

F.R.D. 299, 316 (N.D. Cal. 2018).

As to the second factor, all outstanding related cases, apart from the derivative suit, have

been consolidated into this action. The second factor therefore favors certification. As to the third

factor, concentrating this litigation in the District of Oregon is appropriate because the challenged conduct occurred in Oregon and potential Class Members are not centralized in any one geographic location.

The Court need not consider the fourth factor because the parties only seek certification of a settlement class, not a litigation class. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). The Court finds that he Class meets the superiority requirement.

### 3. Conclusion

The Class meets the requirements for class certification. The Court finally certifies for settlement purposes the following class: all persons or entities who, directly or through an intermediary, purchased or otherwise acquired common stock of PGE at any time during the period of February 13, 2020, through August 24, 2020, inclusive. Excluded from the Settlement Class are: (i) Defendants; (ii) the present or former executive officers or members of the Board of Directors of PGE and their immediate family members (as defined in 17 C.F.R. § 229.404 (Instructions to Item 404(a) (1)(a)(iii), substituting "PGE" for "the registrant")) of any excluded person; (iii) any entity in which any Defendant has, or had during the Class Period, a controlling interest; and (iv) any affiliate of PGE. Also excluded from the Settlement Class are any persons and entities who exclude themselves by submitting a request for exclusion that is accepted by the Court.

**B.  Settlement Approval**

   **1.  General Standards**

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon*, 150 F.3d at 1027). A court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has articulated a number of factors guiding this review, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Lane*, 696 F.3d at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Class action settlements involve "'unique due process concerns for absent class members' who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). When the settlement agreement is negotiated before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 946). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai*, 926 F.3d at 556 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

**2. Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely Duration of Future Litigation; and Risk of Maintaining Class Action Status Throughout Trial**

Lead Plaintiff contends that although it believes it has meritorious claims, proceeding with this litigation would be risky. Lead Plaintiff notes that it faced challenges opposing Defendant's motion to dismiss, which the Court had not resolved before the parties reached a settlement. Lead Plaintiff also notes that even if its claims had survived a motion to dismiss, it would continue to face additional hurdles at the summary judgment stage and lengthy litigation beyond that, including a trial and likely appeals. Besides the risk of dismissal before trial or loss

at trial, continued litigation would be expensive and time-consuming. Further, class certification had not begun at the time the parties reached a settlement, and both sides bore the risk that a class would or would not be certified. Thus, given the parties' uncertainty of the outcome and the complexity of this case, these factors favor approval of the Settlement Agreement.

### 3. Amount Offered in Settlement

The Settlement amount is $6.75 million. The Plan of Allocation awards each claimant a pro rata share of the Settlement Fund based on the claimant's losses. Lead Plaintiff's damages expert calculated the total possible damages to be from $46.1 million to $51.3 million. The Settlement amount therefore provides a recovery of 13.2 percent to 14.6 percent of the total estimated damages. This factor favors approval. *See Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) ("This 2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements."); *Ontiveros v. Zamora*, 303 F.R.D. 356, 370 (E.D. Cal. 2014) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)).

### 4. Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The parties assert that although this case settled before resolution of Defendants' motion to dismiss, they nevertheless exchanged sufficient information to adequately determine the strengths and weaknesses of their positions. The parties exchanged information during

negotiations, during mediation sessions, in mediation statements, and in briefing Defendants'

motion to dismiss. Thus, this factor does not weigh against approval. *See Zepeda v. PayPal,*

*Inc.*, 2017 WL 1113293, at *14 (N.D. Cal. Mar. 24, 2017) (concluding that although the parties

had not engaged in formal discovery, "the parties informally exchanged information and

documents in connection with the three prior mediations conducted in this action," which

favored approval of the settlement).

### 5.   Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a

settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec.*

*Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle

the settlement to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

1049 (9th Cir. 2019). The Court is satisfied that Lead Counsel has extensive experience litigating

securities fraud class actions. Thus, Lead Counsel's recommendation that the Settlement is fair,

reasonable, and adequate favors approval.

### 6.   Presence of a Government Participant

The Class Action Fairness Act (CAFA) provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action
> is filed in court, each defendant . . . shall serve upon the
> appropriate State official of each State in which a class member
> resides and the appropriate Federal official, a notice of the
> proposed settlement[.]

> * * *

> An order giving final approval of a proposed settlement may not be
> issued earlier than 90 days after the later of the dates on which the
> appropriate Federal official and the appropriate State official are
> served with the notice required under subsection (b).

PAGE 16 – OPINION AND ORDER

28 U.S.C. § 1715(b), (d). Defendants mailed notices of the proposed settlement to the U.S. Attorney General and state Attorneys General of all 50 states, the District of Columbia, and the United States Territories by the required deadline under CAFA. Defendants also sent notices to officials at the Oregon Public Utility Commission and the Securities and Exchange Commission. No state or federal official has objected to the Settlement or otherwise become involved in the case. This factor therefore favors approval.

### 7.  Reaction of the Class Members to the Settlement

No Class members objected to the Settlement and only two members opted out. The low rate of opt-outs and the lack of objections show that Class members favor the Settlement. This factor favors approval.

### 8.  Evidence of Collusion

When the settlement agreement is negotiated before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth*, 654 F.3d at 946. The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* at 947.

Class Counsel seeks 25 percent of the Settlement amount, which is not a disproportionate share. Further, the Settlement contains no "clear sailing" or reversion provisions. The Court identifies no evidence of collusion or other conflicts of interest, which favors approval.

### 9. Conclusion

The above factors support approval of the Settlement Agreement. The Court therefore finds that the Settlement and Plan of Allocation are fair, reasonable, and adequate.

## C. Attorney's Fees and Expenses

Requests for attorney's fees must be made by a motion pursuant to Rule 54(d)(2) and Rule 23(h) of the Federal Rules of Civil Procedure. In addition, notice of the motion must be served on all parties and class members. Fed. R. Civ. P. 23(h). When settlement is proposed along with a motion for class certification, notice to class members of the fee motion ordinarily accompanies the notice of the settlement proposal itself. Fed. R. Civ. P. 23(h) advisory committee's notes to 2003 amendment. The deadline for class members to object to requested fees must be set after the motion for the fees and documents supporting the motion have been filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). "Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* at 994. Here, Class Counsel filed its motion for attorney's fees and supporting documents four weeks before the deadline to file objections, thereby complying with *In re Mercury*.

In considering the amount of attorney's fees for class counsel where there is a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. Under either method, the court must exercise its discretion to achieve a "reasonable" result. *Id.* Because reasonableness is the goal, "mechanical or formulaic application of either method, where it yields and unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). When using the percentage method, 25 percent is the "benchmark" fee award,

but this amount may be adjusted upward or downward when "special circumstances" warrant a

departure. *In re Bluetooth*, 654 F.3d at 942. Courts must place in the record the relevant special

circumstances. *Id*. As the Ninth Circuit has explained,

> In *Vizcaino*, we identified several factors courts may consider
> when assessing requests for attorneys' fees calculated pursuant to
> the percentage-of-recovery method: (1) the extent to which class
> counsel achieved exceptional results for the class; (2) whether the
> case was risky for class counsel; (3) whether counsel's
> performance generated benefits beyond the cash settlement fund;
> (4) the market rate for the particular field of law; (5) the burdens
> class counsel experienced while litigating the case; (6) and whether
> the case was handled on a contingency basis.
>
> *Vizcaino* did not establish an exhaustive list of factors for assessing
> fee requests calculated using the percentage-of-recovery method,
> but district courts have frequently referred to the factors it
> identified when considering fee awards for class counsel.
> Ultimately, district courts must ensure their fee awards are
> "supported by findings that take into account all of the
> circumstances of the case."

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (citations

omitted) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)); *see also In*

*re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 954-55 (9th Cir. 2015) (noting that the

*Vizcaino* factors "include the extent to which class counsel achieved exceptional results for the

class, whether the case was risky for class counsel, whether counsel's performance generated

benefits beyond the cash settlement fund, the market rate for the particular field of law (in some

circumstances), the burdens class counsel experienced while litigating the case (e.g., cost,

duration, foregoing other work), and whether the case was handled on a contingency basis" and

that in addition, "a court may cross-check its percentage-of-recovery figure against a lodestar

calculation" (quotation marks omitted)).

The Court exercises its discretion to use the percentage-of-recovery method in this case.

As described above, this case presents complex legal issues and litigation risks, and Class

Counsel secured a favorable Settlement amount in comparison to the Class's estimated damages. These factors favor the 25 percent benchmark fee. Further, a lodestar cross check confirms that a 25 percent fee is appropriate. Lead Counsel expended 924.6 hours at hourly rates ranging from $220 to $1,000. Liaison Counsel expended 60.95 hours at hourly rates of $470 and $635. Liaison Counsel represents that these rates are standard rates in Oregon. Lead Plaintiff also notes that Lead and Liaison Counsel made an effort to staff the case leanly in order to avoid duplicative work. The total lodestar amount is $624,015.25. The requested 25 percent fee is $1,687,500, which represents a 2.7 multiplier of the lodestar cross check. A 2.7 multiplier is reasonable, given the complexity of this case and Class Counsel's efforts to curb repetitive work. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation."). The Court therefore finds that a 25 percent fee is reasonable.

Class Counsel also seeks recovery of $86,382.59 in expenses. These costs include expenses for an energy trading expert, an economics expert, an investigative firm to develop the facts of the case, an experienced mediator, as well as travel, filing fees, and legal research. The Court finds that these expenses have been reasonably and necessarily incurred in this case and are recoverable from the Settlement Fund. *See, e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) ("[J]urisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit."); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

PAGE 20 – OPINION AND ORDER

**CONCLUSION**

The Court GRANTS Lead Plaintiff's unopposed Motion for Final Approval of Class

Action Settlement and Class Counsel's unopposed Motion for Award of Attorney's Fees and

Expenses (ECF 50). The Court awards Class Counsel $1,687,500 in attorney's fees and

$86,382.59 in costs, to be paid from the Settlement Fund. This case is dismissed, but the Court

retains jurisdiction over the parties and all matters relating to the Lawsuit and Settlement,

including the administration, interpretation, construction, effectuation, enforcement, and

consummation of the Settlement and this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2022.

_/s/ Michael H. Simon_
Michael H. Simon
United States District Judge